<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARITZA MELENDEZ, | No. 19cv4830 (EP) (JBC) |
| Plaintiff, | |
| v. | **OPINION** |
| KRISTI NOEM, | |
| Secretary, U.S. Department of Homeland Security, | |
| Defendant. | |

**PADIN, District Judge.**

Plaintiff Maritza Melendez brings this action under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, for the alleged gender and racial discrimination she faced while working as a canine handler for the Transportation Safety Administration ("TSA") at Newark Liberty Airport in Newark, New Jersey, and the retaliation that followed her filing a complaint with the Equal Employment Office ("EEO"). D.E. 16 ("Amended Complaint" or "Am. Compl."). The Court previously denied Plaintiff's partial motion for summary judgement and granted in part and denied in part Defendant U.S. Department of Homeland Security ("DHS") Secretary Kristi Noem's[1] motion for summary judgment. D.Es. 136 ("Opinion" or "Op.") and 137 ("Order").

Following the Court's Opinion, Plaintiff now moves: (1) for an order certifying the Opinion and Order pursuant to Federal Rule of Civil Procedure 54(b) ("Rule 54") so that she can appeal the Opinion to the Third Circuit; and (2) to stay all proceedings in this action pending that

---

[1] Alejandro Mayorkas, former Secretary of the DHS, was the previous Defendant in this action. On January 25, 2025, Kristi Noem took office as Secretary of the DHS. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), the Court substituted the parties accordingly.

appeal.  D.E. 144 ("Motion" or "Mot").  Defendant opposes.  D.E. 147 ("Opposition" or "Opp'n").

The Court decides the motion without oral argument.  *See* Fed. R. Civ. P. 78; L. Civ. R. 78.1(b).

For the reasons explained below, the Court will **DENY** Plaintiff's Motion.

## I.    BACKGROUND

### A.    Factual Background[2]

Plaintiff, a Hispanic female, held several roles with TSA at Newark Airport from 2002 to 2021.  In 2013, she became a canine handler, and primarily worked in Terminal C.  Alexander Pareja-Pucci also joined TSA in 2002 and over the course of his career at Newark Airport, has held multiple managerial positions, including Lead Terminal Manager of Terminal C.

Plaintiff's suit arises from a series of interactions between herself and Pareja-Pucci.  The first incident took place on August 3, 2017, when Pareja-Pucci approached Plaintiff in Terminal C and inquired why she was nearly thirty minutes late to her station.  Plaintiff claims that Pareja-Pucci berated her during this interaction, but he denies that.  On February 5, 2018, the two had a second dispute near a security line in Terminal C while Plaintiff was actively handling a canine. Plaintiff accuses Pareja-Pucci of grabbing her shoulder during the interaction, while Pareja-Pucci characterizes the contact as a tap.  Two days later, Plaintiff initiated the EEO process by contacting an EEO counselor.  Plaintiff formally filed her EEO complaint on May 29, 2018.

Following the initiation of the EEO process and the filing of the EEO complaint, Plaintiff asserts that Pareja-Pucci (along with others in TSA management) at Newark Airport attempted to retaliate against her.  Plaintiff accuses Pareja-Pucci of, among other things, trying to have her removed from her shift in Terminal C, standing shoulder-to-shoulder in an intimidating fashion,

---

[2] As the parties note in their briefs, the Court provided a lengthier factual background in the Opinion, and only repeats facts here that are relevant to resolving the Motion.  Unless stated otherwise, all citations in this section come from the Factual Background section of the Opinion.

glaring at her on multiple occasions, making her uncomfortable to the point she and her canine failed a certification test, and loitering in TSA office space common areas to make Plaintiff not feel welcome. Plaintiff also claims that members of TSA management sought to retaliate against her, including by preventing her from obtaining video evidence to support her allegations, initiating fitness-for-duty evaluations of Plaintiff, assigning her to work in Terminal A instead of Terminal C, and ultimately, constructively discharging her based on her 2020 disability retirement application.

### B. Procedural Background

Plaintiff initially brought this suit against Defendant, Pareja-Pucci, and three other members of TSA management. D.E. 1. All individual defendants were dropped from the Amended Complaint. *See* Am. Compl. The Amended Complaint contains two counts: race- and gender-based discrimination (Count I) and EEO retaliation (Count II). *Id.*

Following the completion of discovery, Plaintiff moved for summary judgment on Count II and for an award of damages; Defendant moved for summary judgment on both counts.

The Court applied the well-known three-step, burden-shifting standard set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)[3] to Plaintiff's claims. Op. at 21-41. And for the reasons explained in more depth below, the Court denied Plaintiff's summary judgment motion and partially granted Defendant's summary judgment motion.

---

[3] Under the *McDonnell Douglas* framework, a plaintiff must first state a *prima facie* claim of discrimination. *Edmond v. Plainfield Bd. of Educ.*, 171 F. Supp. 3d 293, 305 (D.N.J. 2016) (citing *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013)). If a plaintiff establishes a *prima facie* claim, the burden of production shifts to the defendant employer, which must then at step two articulate a legitimate basis for the adverse employment action. Op. at 21 (citing *Burton*, 707 F.3d at 426). And once the defendant offers a non-discriminatory reason, the burden of production shifts back to the plaintiff at step three to show the proffered reasons are pretextual. *Edmond*, 171 F. Supp. 3d at 305.

1.    *Discrimination (Count I)*

A *prima facie* claim of discrimination requires a plaintiff to establish four elements:  (1) the plaintiff belonged to a protected class; (2) she was qualified for the position in question; (3) she was subject to an adverse employment action; and (4) the adverse action was taken under circumstances giving rise to an inference of discrimination.  *Id.* at 21 (citing *Edmond*, 171 F. Supp. 3d at 305).

The Court determined that Plaintiff failed to demonstrate an inference of discrimination based on either race or gender and accordingly dismissed her discrimination claims at step one of the *McDonnell Douglas* framework.  *Id.* at 21-27.  And because Plaintiff failed to show any conduct directed toward her was due to a protected characteristic, the Court held that she could not establish a *prima facie* hostile work environment claim either.  *See id.* at 29 (citing *Iovanella v. Genentech Inc.*, No. 09-1024, 2010 WL 11527386, at *10 (D.N.J. Dec. 31, 2010), *aff'd*, 452 F. App'x 85 (3d Cir. 2011)).  Accordingly, the Court granted Defendant summary judgment on Count I of the Amended Complaint.

2.    *EEO retaliation (Count II)*

Before reaching the merits of Count II, the Court first determined that Plaintiff failed to exhaust several of her allegations involving TSA management, and therefore, dismissed them from the Amended Complaint.  *Id.* at 15-21.  However, because Plaintiff's EEO complaint had focused on Pareja-Pucci's allegedly discriminatory conduct, *his* subsequent retaliatory conduct was within the scope of the EEO complaint, and therefore, the Court held that Plaintiff exhausted her retaliation claims involving him.  *See id.* at 19.

The Court then went on to consider whether either party was entitled to summary judgment on the exhausted allegations of retaliation.  Op. at 29-33.  To make out a *prima facie* claim of retaliation under Title VII, a plaintiff must show that:  (1) she engaged in activity protected by

4

Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action. *Id.* at 30 (quoting *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006), *as amended* (Sept. 13, 2006)).

The Court found several of the retaliatory actions Plaintiff complained of did not rise to the level of an adverse employment action. For example, the Court explained that the "multiple instances where Plaintiff testified that [] Pareja-Pucci glared at her from afar, blocked her path, stood in the shared office area and approached her," did not give rise to an adverse employment action. *Id.* at 32 (citing *Ackie v. Phila. Gas Works*, No. 19-4275, 2021 WL 2375876, at *16 (E.D. Pa. June 10, 2021), which noted that a supervisor's alleged "stalking" was not an adverse employment action because it was "entirely reasonable" for a supervisor to oversee areas under his supervision). The Court reasoned that Pareja-Pucci's conduct fell into the category of "petty slights" that the Supreme Court has held are insufficient to show a material adverse employment action. *Id.* at 33 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)). The Court also determined that Plaintiff did not establish causation with respect to a remark that Pareja-Pucci allegedly made in February 2018 about removing Plaintiff from Terminal C, and accordingly, dismissed that allegation as well. *Id.* at 35-38.

Although most of Plaintiff's exhausted claims failed at step one of the *McDonell Douglas* framework, her allegation that she was transferred to Terminal A in retaliation for filing an EEO complaint did not. The Court determined that there were material disputes of fact as to what role Pareja-Pucci played in Plaintiff's transfer to Terminal A as well as to whether Plaintiff's filing of the EEO complaint was the reason for her reassignment. *Id.* at 33-34, 38.

At step two, Defendant proffered multiple legitimate explanations as to why Plaintiff was transferred to Terminal A. *Id.* at 39-40. And while the Court was not convinced by most of Plaintiff's arguments at step three as to pretext, the Court noted that an inconsistency in the record regarding the true motivation behind Plaintiff's transfer[4] was sufficient to raise a factual issue, and therefore, denied Defendant summary judgment on this claim. *Id.* at 41-42 (citing *Jalil v. Avdel Corp.*, 873 F.2d 701, 709 (3d Cir. 1989)).

In sum, the only allegation that survived summary judgment was that Plaintiff was transferred to Terminal A in retaliation for filing an EEO complaint. This Motion followed.

## II.    LEGAL STANDARD

Under Rule 54(b):

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claims—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

"By allowing a district court to enter a final judgment on an order adjudicating only a portion of the matters pending before it in multi-party or multi-claim litigation and thus allowing an immediate appeal, Rule 54(b) 'attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties.'" *Elliott v. Archdiocese of New York*, 682 F.3d 213, 220 (3d Cir. 2012) (quoting *Allis–Chalmers Corp. v. Phila. Elec. Co.*, 521 F.2d 360, 363 (3d Cir. 1975)).

The Supreme Court has developed a two-part test for district courts to follow when deciding whether to grant a Rule 54(b) certification.

---

[4] The inconsistency concerned whether Plaintiff was reassigned so that the canine team could do administrative work in Terminal A, or whether she was reassigned because Plaintiff was anxious around Pareja-Pucci. *See* Op. at 41.

*First*, the "district court must determine that it is dealing with a 'final judgment.'" *Curtiss–Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980). In other words, there "must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Id.* (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427 (1956)). "A single set of interrelated facts, even though it supports several causes of action, will usually constitute only a single 'claim.'" *Kapossy v. McGraw-Hill, Inc.*, 942 F. Supp. 996, 1000 (D.N.J. 1996). Thus, "[t]he partial adjudication of a single claim is not appealable, despite a rule 54(b) certification." *Sussex Drug Prods. v. Kanasco, Ltd.*, 920 F.2d 1150, 1154 (3d Cir. 1990) (citing *Aetna Casualty & Surety Co. v. Giesow*, 412 F.2d 468, 470 (2d Cir. 1969)).

*Second*, once having found a final judgment, "the district court must go on to determine whether there is any just reason for delay." *Id.* "Rule 54(b) makes clear that a district court may direct entry of a final judgment under the rule '*only if the court expressly determines* that there is no just reason for delay.'" *Elliott*, 682 F.3d at 220 (quoting Rule 54(b)). The court must "clearly articulate the reasons and factors underlying its decision to grant 54(b) certification." *Id.* at 220-21. Factors for the district court to consider include:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; [and] (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Giuffre v. N. Am. Spine LLC*, No. 16-1641, 2023 WL 4907095, at *5 (D.N.J. Feb. 7, 2023) (citing *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 203 (3d Cir. 2006)).

"Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims. The function of the district court under the Rule is to act as a 'dispatcher.'" *Curtiss-Wright Corp.*, 466 U.S. at 8 (quoting *Sears*, 351 U.S. at 435). Namely, when deciding a Rule 54(b) motion, the district court "should consider judicial administrative interests, as well as the equities involved in the case, in order to determine whether discrete final decisions in multiple-claim actions are ready for appeal." *Berckeley Inv. Grp.*, 455 F.3d at 202.

The Third Circuit has made it clear that "[d]isfavoring piecemeal appeals is a long-standing policy of the federal courts." *Sussex Drug Prods.*, 920 F.2d at 1153. Indeed, "[c]ertification of a judgment as final under Rule 54(b) is the exception, not the rule, to the usual course of proceedings in a district court." *Elliott*, 682 F.3d at 220. "The burden is on the party seeking final certification to convince the district court that the case is the 'infrequent harsh case' meriting a favorable exercise of discretion." *Giuffre*, 2023 WL 4907095, at *4 (quoting *Anthuis v. Colt Indus. Operating Corp.*, 971 F.2d 999, 1003 (3d Cir. 1992)).

## III.    ANALYSIS

Both parties have expressed an intent to proceed to trial on the remaining retaliation cause of action. *See* Mot. at 5.[5] Plaintiff also represents that regardless of the verdict at trial that she intends to appeal the Opinion. *Id.* Therefore, she asks the Court to certify the Opinion under Rule 54(b) so that she can appeal it immediately. *See generally id.* Because the Court finds that Plaintiff cannot show a final judgment for purposes of Rule 54(b), the Court will **DENY** her Motion.

---

[5] Because Plaintiff does not include page numbers in her Motion, the Court uses the page numbers generated by CM/ECF.

**A.    There Is No Final Judgment for Rule 54(b) Purposes**

"The classic definition of a 'final decision' is one that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Morton Int'l, Inc. v. A.E. Staley Mfg. Co.*, 460 F.3d 470, 476 (3d Cir. 2006) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996)). Accordingly, "an order which terminates fewer than all claims, or claims against fewer than all parties, does not constitute a 'final' order." *Id.* (quoting *Carter v. City of Philadelphia*, 181 F.3d 339, 343 (3d Cir. 1999)).

As discussed above, the Court's Opinion dismissed Count I of the Amended Complaint and all but one allegation of retaliation within Count II. According to Plaintiff, the Court's dismissal of Count I "undoubtedly constituted a 'final judgment' of that claim for Rule 54(b) purposes." Mot. at 7-8. And while she acknowledges that the Court did not fully dismiss Count II, Plaintiff argues that Count II is actually comprised of multiple claims that are distinguishable from the remaining retaliation allegation regarding Plaintiff's transfer to Terminal A. *Id.* at 8.

Defendant counters that the Opinion was not a final judgment for purposes of Rule 54(b) because Count I and II are alternative theories of recovery on essentially the same nucleus of facts involving the same parties. Opp'n at 7-8. Thus, under Rule 54(b), Counts I and II are really part of the same claim, even if brought under different counts.

For purposes of a Rule 54(b) motion, "there is no definitive test to determine whether more than one claim is before the court." *Gerardi v. Pelullo*, 16 F.3d 1363, 1369 (3d Cir. 1994) (citing *Allegheny Cnty. Sanitary Auth. v. United States Env't Prot. Agency*, 732 F.2d 1167, 1172 (3d Cir. 1984)). Courts have recognized that "[t]he line between deciding one of several claims and deciding only part of a single claim is sometimes very obscure." *Id.* (citing 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2657, at 60-61 (2d ed. 1983)). The Third Circuit

9

has even said that "uncertainty is the rule." *Sussex Drug Prods.*, 920 F.2d at 1154.  Yet despite

the uncertainty:

> [t]here are . . . some guideposts. *Rosedale v. Township of Reading*, [] No. 19-16428, 2021 WL 1627086, at *2 (D.N.J. Feb. 23, 202[1]).  A claim is generally eligible for Rule 54(b) certification if it reaches the "requisite degree of finality as to an individual claim in a multiclaim action." [*Sussex Drug Prods.*], 920 F.2d at 1154.  "Alternatively, 'a complaint asserting only one legal right, even if seeking multiple remedies for the alleged violation of that right, states a single claim for relief' for the purposes of Rule 54(b)." *Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737, 743 n.4 (1976).

> Similarly, the following scenarios do not qualify for Rule 54(b) certification: "[a]lternative theories of recovery based on the same factual situation" *Allegheny Cnty.* [], 732 F.2d [at] 1172 []; "[a]n order that eliminates two of several elements [ ] flowing from a single claim" *Marino v. Nevitt,* 311 F.2d 406, 408 (3d Cir. 1963); and partial adjudication of a claim. [*Sussex Drug Prods.*], 920 F.2d at 1154.  Stated differently, "a single set of interrelated facts, even though it supports several causes of action, will usually constitute only a single 'claim.'" *Kapossy*, 942 F. Supp. 996, 100[0].

*In re Direct Purchaser Insulin Pricing Litig.*, No. 20-3426, 2023 WL 3431213, at *4 (D.N.J. May

12, 2023).

In the Court's view, Defendant has the better of the argument.  This is most clear with

respect to Count II, in which Plaintiff asserts that a series of retaliatory actions were taken in

response to her filing an EEO complaint, and which ultimately resulted in her constructive

discharge.  Plaintiff attempts to distinguish her transfer to Terminal A as a separate claim primarily

by arguing that there is no exhaustion issue, while the exhaustion issue was dispositive of her other

allegations of retaliation.  Mot. at 8-9.  Plaintiff's argument is unavailing for two reasons.  *First*,

Plaintiff mischaracterizes why her other retaliation allegations were dismissed.  While she is

correct that *some* were dismissed because she failed to exhaust her administrative remedies, that

is not true for *all*.  Indeed, several of her allegations failed at steps one and two of the *McDonell*

*Douglas* test.  For example, the Court found that Pareja-Pucci's conduct on multiple occasions did

not give rise to an adverse employment action.  *See supra* Section I.B.  Moreover, the Court denied Plaintiff summary judgment on her assertion that her transfer to Terminal A was in retaliation for filing an EEO complaint—and left that issue to be decided by a jury—on the basis that she failed to establish a causal connection.  This alone demonstrates why her exhaustion argument is not persuasive and why there has not been a final judgment as to Count II.

*Second*, Plaintiff parses her retaliation cause of action too thinly in an effort to assert each allegation is a separate claim for purposes of Rule 54(b).  If a series of retaliatory actions that arise from the same set of facts are not part of the same claim, then what is?  *See Kapossy*, 942 F. Supp. at 1000 ("Claims cannot be 'multiple claims,' within the meaning of Rule 54(b), 'if they are 'so closely related that they would fall afoul of the rule against splitting claims if brought separately.'" (quoting *Sussex Drug Prods.*, 920 F.2d at 1154)).

In a similar vein, the Court also finds that Plaintiff's other dismissed causes of action— including her discrimination, hostile work environment, and constructive discharge contentions— are also part of the same claim for purposes of Rule 54(b).  When determining whether multiple counts of a complaint are part of the same claim under Rule 54(b), the Court must assess "whether the remaining counts of the complaint will require proof of the same facts as those counts which were dismissed on summary judgment, in other words, whether these counts share a common 'core of operative facts.'"   *Kapossy*, 942 F. Supp. at 1000 (quoting *Sussex Drug Prods.*, 920 F.2d at 1155).  Here, Plaintiff's allegations arise from the same series of interactions between Pareja-Pucci and Plaintiff, which led Plaintiff to initiate the EEO process and subsequently bring this action.  Even if brought under separate counts, there is only one claim under Rule 54(b) when the asserted claims are all "based on the same factual situation." *Allegheny Cnty.*, 732 F.2d 1167 at 1172.  That

is exactly the case here. Because the Court concludes that all allegations within Counts I and II are part of the same claim under Rule 54(b), the Court will **DENY** Plaintiff's Motion.[6, 7]

## IV.    CONCLUSION

For the foregoing reasons, the Court will **DENY** Plaintiff's Motion. An appropriate Order accompanies this Opinion.

Dated: December 27, 2025

                                                    **/s/ Hon. Evelyn Padin**
                                                    _____
                                                    Evelyn Padin, U.S.D.J.

---

[6] Because Plaintiff cannot establish a final judgment for purposes of Rule 54(b), the Court only briefly notes that she would not likely meet her burden in showing no just reason for delay either.

Courts routinely hold that "[w]here the adjudicated and unadjudicated claims share significant similarities, such as involving the same parties, the same legal issues, or the same evidence, Rule 54(b) certification is disfavored." *Indivior Inc. v. Dr. Reddy's Lab'ys S.A.*, No. 17-7106, 2020 WL 4932547, at *12 (D.N.J. Aug. 24, 2020) (citation omitted). As Defendant emphasizes, the significant similarities in this case between the dismissed and remaining allegations—including the same parties, some of the same evidence, and overlapping legal issues—strongly weigh in favor of denying the Motion.

Relatedly, this Court has found that the second factor also weighs in favor of denying a Rule 54(b) motion where the litigation of additional pre-trial issues—given the significant similarities between the adjudicated and unadjudicated allegations—could alter the basis of the appeal. *See Dawidoicz v. Rutgers Univ.*, No. 18-3285, 2021 WL 1720782, at *6 (D.N.J. Apr. 29, 2021).

The third and fifth factors also counsel against granting Plaintiff's appeal. Plaintiff has made it clear that she intends to appeal the outcome of the Opinion and Order regardless of the outcome at trial. While Plaintiff believes that position warrants the Third Circuit hearing her challenges now, the Court recognizes the possibility that even if the Third Circuit considered the Opinion, it likely could be "called upon to review the facts in this case twice," *id.* which runs contrary to the "historic federal policy against piecemeal appeals," *id.* (quoting *Sears*, 351 U.S. at 438).

[7] The Court's decision to not certify the Opinion and Order pursuant to Rule 54 renders Plaintiff's request to stay all proceedings pending that appeal moot.